## Case No. 1,208.

### In re BECKER.

[21 Int. Rev. Rec. 243.]

District Court, E. D. Missouri. July 21, 1875.

INTERNAL REVENUE — POWER OF SUPERVISORS — SUMMONS TO PRODUCE BOOKS AND PAPERS — PARTICULARITY OF DESCRIPTION.

[1. The authority of a supervisor of internal revenue to issue a summons, made co-extensive with that of assessors by Act July 20, 1868, § 49, (15 Stat. 144,) is not affected by the subsequent transfer by statute of the assessor's authority to collectors.]

[2. The validity of a summons which recites as authority for its issuance the appropriate statute and section is not affected by its failure to refer to the section of the Revised Statutes which embodies such statute and its amendments.]

[3. An adjournment of a hearing does not necessitate a new summons for the adjourned day.]

[4. The power of a supervisor of internal revenue to issue a summons calling for the production of books and papers, under Rev. St. §§ 3163, 3173, 3174, does not extend to issuing such a summons to a person not engaged in a business particularly affected by the revenue laws, commanding him to produce all his books and papers. The summons should be limited to books and papers concerning the subject of investigation, which should be mentioned with reasonable certainty.]

[5. Such a summons describes the books with reasonable certainty, within the meaning of Rev. St. § 3174, when it requires a person to produce certain books and papers "of yourself and your said firm, * * * which contain entries relating to grain and malt by you * * * sold * * * to Bingham Bros., at Patoka and Evansville, Ind., and St. Louis, Mo., which entries were made in the course of * * * the business of your said firm, as maltsters, to wit: Each and every ledger kept and used by you * * * now or heretofore, containing any such entries, * * * for or during the years 1873, 1874, and 1875, * * *; each and every journal and day-book and cash-book * * * containing such entries * * * for * * * the years last named; * * * and any and all other books, papers, dray tickets, and documents containing any like entries for each of the years aforesaid, and in your custody and under your control."]

[6. One who in good faith questions the legality of a summons issued by a supervisor of

internal revenue for the production of books and papers is entitled to consideration; and consequently an order for an attachment, when made, will be with the provision that should the witness, in the mean time, obey the supervisor's process, such order will be discharged.]

A final decision was rendered by TREAT, District Judge, in the U. S. district court, E. D. of Missouri, July 21, in the case wherein Frederick Becker refused to obey the order of U. S. Supervisor Meyer, to produce certain books and papers, and wherein an attachment was asked by the supervisor to compel obedience to his subpoena. On the third day of July inst. General Meyer, supervisor of internal revenue, issued his summons on Fred. Becker to appear before him on July 5, in a matter in which Bingham and Bro., of Indianapolis, were concerned, and bring with him all his ledgers, journals, dray tickets, etc., showing shipments from June, 1874, to date. Mr. Becker refused to obey this summons, and on Wednesday, July 7, General Meyer applied to the U. S. district court for an attachment to compel obedience to the summons. The court cited Mr. Becker to appear on the 10th inst., and show cause why the attachment should not issue.

When the case came up, General Noble appeared for Mr. Becker and urged that the summons was void on its face, and that the law authorizing supervisors of internal revenue to summons citizens and require them to show their books and papers—they not being engaged in any business regulated by the internal revenue law—was in violation of the constitution of the United States. But even granting it to be constitutional, it was so far in derogation of common law and common right as to require the utmost particularity of statement by the supervisor, both as to the complaint made by the United States, and the books and papers especially required, and that no general warrant like the one issued could be sustained with safety to individual rights.

Colonel Dyer, U. S. Dist. Atty., represented the government, and made a lengthy argument in support of the supervisor's writ.

TREAT, District Judge. This is an application by the supervisor of internal revenue, under section 3175 of the Revised Statutes of the United States, for an attachment. Under section 3163, the supervisor has issued a summons for respondent to appear before him and produce certain books named. The summons (being an old printed form) recites that said supervisor issued said process by virtue of authority vested in him by section 49 of the act of 1868, which section has since been amended, and, as affected by subsequent amendments, has become section 3163 of the Revised Statutes.

As stated by this court in the recent case wherein Bensberg [unreported] was respondent, reference to certain provisions in the U. S. statutes which had since been repro-

duced in the Revision are to be held applicable to the said reproduced sections. It is true, that prior to the statute abolishing assessors, certain duties and powers vested in said assessors were also devolved upon supervisors; and it is also true, that when the duties theretofore devolved on assessors were vested in the collectors, these duties and powers in the supervisor were not divested, merely because the collectors were substituted for assessors. The powers of the supervisors as previously established, did not change because there was a change, eo nomine, in the particular officer to whom the power of assessor was transferred. Hence the supervisor, who, under the act of 1868, had certain powers co-extensive with those of assessors, was not deprived thereof when the assessors' powers were transferred to and vested in the collectors. The recital therefore, in the supervisor's summons, of section 49 of the act of 1868, as the source of his authority, did not render invalid his authority to summon respondent, because, through subsequent legislation, changes of names had occurred with respect to those whose powers were also vested in him. Such recital was wholly unnecessary.

It is urged, that inasmuch as respondent did appear at the day named in obedience to the summons, and proceedings were adjourned to the next day, he was no longer subject to the original summons. Such a doctrine cannot be maintained; for when a person is rightfully summoned to appear as a witness on the day named, he still remains under the power of the summons or subpoena until discharged. The adjournment of the hearing until the following or other day does not necessitate a new summons for the adjourned day.

It is true, the supervisor is not, in a technical sense, a judicial officer, but within the provisions of the constitution of the United States, as declared by the U. S. supreme court in the case of Murray v. Hoboken Land & Imp. Co., 18 How. [59 U. S. 272,] he can exercise lawfully the extra-judicial authority in revenue matters vested in him by statute, unless the statute is, in such respect, unconstitutional and void. Following the doctrines of that and other decisions, it must be held that the powers vested in United States supervisors and collectors to examine the premises, books, papers, etc., of persons in certain occupations designated in the internal revenue laws, are valid. The latter enter upon such pursuits with full knowledge of those statutes which subject their premises, books, etc., to such examination, and which provide specific penalties for such refusal to permit such examination, etc. But the more serious question is, to what extent the premises, books, papers, etc., of private citizens, not engaged in such pursuits, are subject to the arbitrary authority of revenue officers. The language of section 3163, dissevered from other sections, is that supervisors have

power to examine all books, papers, accounts and premises. Of whom? An examination of premises, independent of those specified in the internal revenue act as specially liable thereto, as well as of books and papers, must be subject to some limitation for the protection of private rights. Power is granted to collectors even to break into distilleries, etc., under circumstances enumerated in the statutes, but does that power extend to the private homes of every citizen in the land? Is a collector or supervisor armed with arbitrary authority to invade the homes, and seize, or subject to inspection, the domestic correspondence of any person, without a showing that in such homes or correspondence, evidence of violated law may be found? No such arbitrary authority is permissible under the constitution and laws of the United States.

On the other hand, violations of law must not go unredressed; and consequently power, to a well defined extent, must be vested somewhere to investigate, expose and punish. The problem is, to what extent shall power go consistent with individual rights?—a problem which the constitution and laws of the country have solved. In the revenue system those entrusted with its administration are not compelled to resort to judicial proceedings, except so far as defined, and so far as constitutional or statutory provisions control. Revenue officers act under statutes, which define and limit their authority.

What, then, is the authority of a supervisor or collector? In all cases where persons embarking in specified occupations to which are attached restrictions, etc., subject to examination, etc., by those officers, the latter may act pursuant to the extra-judicial authority thus vested in them and inherent in the subject matter. Outside of those occupations and with respect to persons wholly disconnected therewith, and with those engaged therein, can they, except in compliance with constitutional provisions, indulge in searches and seizures, ad libitum? Every man is bound to contribute as the law exacts, towards the revenues of the government. When, within the law, the supervisor insists upon a rightful examination, his authority must be respected, but no further. Under section 3163, his power over persons not engaged in prescribed pursuits, is merely to issue a summons as to books and papers, equivalent to a subpoena duces tecum. It cannot be said that he has a right to search and seize, irrespective of constitutional restraints. Hence if, in the course of his lawful investigations into the books, papers, etc., of distilleries, rectifiers, wholesale liquor dealers, etc., he reaches the conclusion that the premises, etc., of those not embarked in such business ought to be examined, he must comply with the requirements of the constitution, before searches and seizures can be made. If he desires, on the other hand, a mere summons in the nature of a subpoena duces

tecum, he may issue the same, according to section 3163, which is a mere repetition of the legal rule as to such subpoenas. The person thus summoned must comply therewith, or submit to the decision of the court to whom application is made for attachment. The court hears such application and all the facts connected therewith, and grants the attachment, and, it may be, after hearing, punishes for the disobedience, as for contempt.

The court acts in rigid conformity to established rules of right. It must decide whether the supervisor or collector was pursuing the strict line of his authority. Congress did not, and could not, commit to either of those officers, judicial functions. They must appear before the court, invoke its aid, submit to it the facts, and there the adverse party can be fully heard. The court must then decide, judicially, what the law upon the facts requires. Thus the case is not left to the arbitrary will of any officer. These remarks are made to avoid misconstruction—to indicate, in marked language, that revenue officers are creatures of the law and have no arbitrary authority over the property, homes, private books, etc., of every citizen. Within the legal authority vested in them, they must act with faithfulness and diligence. They may examine and investigate distilleries, etc., as the internal revenue law authorizes. When they seek information from other sources they must specify in their summons with reasonable certainty what books, etc., they desire. It is not necessary that the summons should state who is charged with an offence, for the work in hand is a mere investigation, possibly to ascertain whether any offence has been committed. Still the summons should indicate to what the proposed evidence relates. If this be not correct, and the broadest interpretation of section 3163, as to all persons, etc., is to obtain, then even the ordinary rules as to subpoena duces tecum for the protection of private rights are overthrown.

In this case (though informally) the summons is for certain books and papers pertaining to the affairs of Bingham Bros. The respondent has chosen to call for the opinion of the court. It is the right in doubtful cases involving grave questions of constitutional law, for the citizen to be heard patiently, especially where new questions are presented. It must be observed that the acts of congress provide for proper judicial review of each case presented by a supervisor or collector, and grant the person summoned a full hearing before final action. He is, therefore, not left to arbitrary control or punishment. If there should be an attempted abuse of power, the court can afford the needed protection. The conclusion is, that a supervisor should state in his summons against private persons, with reasonable certainty, what books, papers, etc., he demands, and it is proper for him also to state to what subject matter said books, etc., are supposed to relate, in order

that the person summoned may not be compelled to subject his domestic or other correspondence disconnected with the subject matter, to unnecessary scrutiny or exposure. If the summons is not obeyed, and the aid of the court is invoked, the latter tribunal will determine whether the books, etc., ought to be produced or not, and act accordingly. No arbitrary rule will suffice for all cases. In this case the supervisor recites, as the source of his authority, an act of congress long ago annulled, and technically repealed. As already stated, that recital may be treated as mere surplusage, and if not, the court may be authorized to take cognizance of what the law on that subject is. His summons requires from a person, not a distiller, etc., the production, in general terms, of all his books, papers, etc., between dates named, without averring that they relate to the investigation of any matter whatever within his province to interfere with. For aught the court can ascertain he has undertaken to assume the quasi-judicial functions of investigating cases of counterfeiting, perjury, etc., entirely beyond his extra-judicial powers. His powers are statutory and limited; within those defined limits he is clothed with great and stringent authority. Outside of them he cannot act. Hence, on the face of all process issuing from him, it must appear that the subject matter, as well as the process, are such as fall within his supervision. He has no arbitrary authority to issue process at pleasure against every person, concerning any matter which he may choose to inquire into. His functions are to investigate, etc., matters arising under the internal revenue laws, and the modes of his investigation into such specific matters are clearly stated. His process. therefore, should clearly state that the production of books, papers, etc., (which he must mention with reasonable certainty), relate to, or are supposed to contain, information concerning some violation of the internal revenue laws, which he is investigating. His powers, in other words, are not absolute and general, but limited. In this, as in all like matters, even in the United States courts, where authority is limited, jurisdictional facts must appear directly. A suit instituted in the United States circuit court, for instance, without the averment of the required jurisdictional fact, is demurrable, and the want of jurisdiction may even be taken advantage of on the trial of a plea at bar, so extra-judicial authority must fully appear, and for even more cogent reasons. These views are elemental, and underlie all jurisdictional questions where authority is limited. Hence, as the summons does not show that the supervisor was acting within the limits of his authority, the court can take no steps to enforce the same.

The objection that no right or power is, or can be, vested in a supervisor to punish, inasmuch as he cannot act judicially, cannot arise under section 3175, for by its terms full

hearing is to be had judicially before punishment can be imposed. The technical objection that courts cannot punish under the name of contempt, disobedience of orders or process issued by non-judicial, or extra-judicial officers, rests upon a literal reading of that section. The power of the U. S. courts to punish summarily for contempts is much restricted by acts of Congress, and section 3175 refers to these limitations. But if such a court ascertains on hearing that any one has disobeyed the legal summons of a supervisor, it can order him to appear, produce his books, etc.; disobedience to which order of the court would bring the offender within the doctrine prescribed as to contempts—not of the supervisor's order, but of the order of the court.

In accordance with this opinion of the court, the U. S. supervisor issued the following amended summons: "United States of America. Eastern District of Missouri. Office of Supervisor of Int. Revenue. St. Louis, July 20, 1875. To Frederick Becker, of F. Becker and Co., St. Louis, Mo.: By virtue of the authority vested in me by section 3163 of the Revised Statutes of the United States, you are hereby summoned and required to appear before me, Ferdinand Meyer, a supervisor of internal revenue of the United States, duly appointed, commissioned and qualified as such and assigned to duty in the district of Missouri, Kansas, Arkansas, New Mexico and Indian Territory and Texas, and in said district, at my office therein, to wit, room No. 6, No. 511 Pine street, in the city of St. Louis, state of Missouri, on the 21st day of July, 1875, at three o'clock p. m. of that day, then and there to testify before me, and the truth to say in certain matters depending before me as such supervisor, wherein as such supervisor I am examining into the efficiency and conduct as such of the officers of internal revenue within and for the first collection district of Missouri, and am aiding in the detection and punishment of frauds in relation to the collection of internal taxes, and especially in relation to the fraudulent non-payment of internal revenue taxes, due now and heretofore on liquors, high wines and distilled spirits, distilled in and brought into said district last named; and for the purposes aforesaid you are further summoned and required to produce and have before me, as such supervisor, at the time and place aforesaid, certain books, papers and documents of yourself and your said firm, now and heretofore in your possession, custody and control, and which contain entries relating to grain and malt, by you and your firm sold, shipped and delivered to Bingham Bros., at Patoka and Evansville, Indiana, and St. Louis, Mo., which entries were made in the course of and relating to the business of your said firm as maltsters, to wit: Each and every ledger kept and used by you and your

said firm now or heretofore, containing any such entries as aforesaid, made for or during the years, 1873, 1874, and 1875, and any part thereof; each and every journal and day-book and cash-book kept or used by you now or heretofore, containing such entries as aforesaid, made for and during the years last named, or during any part thereof, and any and all other books, papers, dray tickets and documents containing any like entries for each of the years aforesaid, and in your custody and under your control. Hereof fail not at your peril. Given under my hand, at my office aforesaid, this 20th day of July, 1875. Ferd. Meyer, Supervisor of Internal Revenue."

The case came up for a hearing on this amended summons on Thursday, July 21, and TREAT, District Judge, rendered the following opinion of the court:

When this matter was before me on a prior occasion, I had to decide substantially two propositions. The first was, that in the performance of this extra-judicial duty, which was held by the United States supreme court in the Case of Murray's Lessee, the officers charged with the exercise of such limited jurisdiction must show on the face of the papers that they were acting under it. The second was, that where such authority, comparatively arbitrary in one sense of the term, was lodged in non-judicial officers, and an application was made to the court under the statutes of the United States, to issue an attachment for disobedience of an order made under such limited jurisdiction, the court should insist that the officer should not only bring himself, upon the face of the papers, strictly within the special authority so given him, but also show that he had so pursued the authority as to inform the party against whom process is issued, "with reasonable certainty," in the language of the statute, of what was required of him. Certainly there is a limit which ought to be duly considered and defined in regard to this matter.

Under the statutes of the United States, and pursuant to the rulings of the supreme court, pertaining to the collection of the revenues of the government, certain officers are vested with very large powers. It has been not only considered essential by the legislative branch of the government that such authority should be vested in that class of officers, but the authority thus vested has been upheld by the supreme court of the United States, drawing a broad distinction between judicial and extra-judicial action. I would not attempt to define more clearly than is done by the supreme court, in the Case of Murray's Lessee, the distinction between these two classes of authority.

The supervisor of internal revenue, charged by section 3163 of the Revised Statutes with the performance of certain duties, must show on the face of the process that he is engaged in the discharge of the duties thus devolved upon him. The former subpoena was held fatally defective in that respect. He is charged by law with the investigation of alleged revenue frauds, and of the inefficiency or dereliction of duty on the part of revenue officers; but he is not clothed with authority, outside of those particular functions, to meddle with the business of private citizens.

The present subpoena defines very clearly and distinctly that the supervisor is engaged in the specific duties devolved upon him as such officer. Therefore, full authority is disclosed for him to proceed, leaving open the only other inquiry: Whether the mode of procedure, that is, the particularity of description of what he requires of the witness, is such as to bring the case within the law. The statute itself uses the phrase "reasonable certainty"—that he shall define the papers which he wishes to be produced "with reasonable certainty." As I suggested before, it is impossible to lay down any rule which could in all cases absolutely define the degree of particularity requisite in a subpoena duces tecum; but each case must be determined by its own facts and circumstances. Where it is possible to describe specifically and with extreme particularity the thing desired, the officer should do it; but where he cannot with such exact minuteness define the book or paper which is to be produced, he must describe it as clearly as practicable, always keeping within the rule of "reasonable certainty." Evidently the powers given by section 3163 should be divided into two classes. He has power to examine all persons, books, papers and premises, provided, however, that that examination pertains to the books, papers and premises of persons engaged in the specific business concerning which he is authorized to make investigation, and not of indifferent third parties; because under the power given in the internal revenue act, to search and examine matters pertaining to distillers and revenue officers, no power is embraced or could be embraced thus infringing the terms of the constitution against unlawful searches. The second class evidently relates to indifferent third persons, that is, persons not engaged in the particular occupations mentioned in the internal revenue laws. The language of the statute is, that "he shall have power to examine all persons, books, papers, accounts and premises, to administer oaths, and to summon any person to produce books and papers, or to appear and testify before him, and to compel a compliance with such summons in the same manner as collectors do." The section in regard to collectors authorizes them (and consequently by section 3163 authorizes supervisors) to summon any person (meaning the distillers, etc.,) or any other person having possession, custody or care of books of account containing entries relating to the

business of such person, or any other person he may deem proper, to appear before him, and produce such books, at a time and place named in the summons, and to give testimony or answer interrogatories under oath respecting any objects liable to tax, etc. Then the statute proceeds to state what is a proper summons, how it should be served, what it should contain, namely: That where the production of books is required, it is sufficient that such books be described with "reasonable certainty."

The case from Simon's Reports, which has been cited, was a proceeding in the nature of a bill in chancery, or information under the corporation act of England, where the attorney-general was nominally the party suing, and the general doctrines there laid down as to the authority of a court of chancery, or of a common law court, to require a third party under a subpoena duces tecum to bring papers before the court, are not strictly applicable in a case like that I am now considering. Here the proceeding is to enforce compliance with a non-judicial, or extra-judicial authority, connected with the general revenue system, the legality and constitutionality of which has been settled by the supreme court of the United States. Following these decisions, and also various decisions which have been recently made in other courts with regard to the exercise of such extra-judicial authority, this court has to determine whether the description contained in the subpoena falls within the purview of the statute requiring "reasonable certainty."

First, it is set out that this supervisor, within the limits of the authority vested in him, was engaged in certain investigations, to effect which he considers it necessary to have before him certain books which this witness is alleged to have in his possession, custody and control, containing entries which may throw light upon that subject—that is, in the language of the statute, they relate to the subject-matter of the investigation. The subpoena particularizes a little farther by saying that they relate to a certain class of shipments; that is, shipments to a particular individual. This particularity, then, is attained so far as the first class is concerned, namely, the books, etc., containing entries relating to shipments from and to Patoku, Indiana, etc., to Bingham Brothers, in the course of business dealings between the witness or his firm and Bingham Brothers. Moreover, it specifies the ledger and journal; and then adds the clause to which objection principally is taken, namely, "and any and all other books, papers, dray tickets and documents containing like entries in each of the years aforesaid in your custody, etc." Now, in the interpretation of this clause, whilst it might have aided the court somewhat if this officer had declared in some form that it was utterly impracticable for him more specifically to define the dray tickets, docu-

ments, etc., yet the court must be supposed to have such general knowledge of the course of business in matters of this character as to understand that without access to the books, papers etc., and an examination thereof in detail, it would be impracticable, or, to use the language of the statute, unreasonable, to consider that he could with more particularity specify them. The objection to this conclusion lies in the fact that books generally might be brought before these officers containing not only entries in regard to the particular matters undergoing investigation, but all the business transactions of the party; and it is very properly suggested that a man's general business ought not to be subjected to scrutiny whether of an officer or any one else who chooses to pry into transactions with which the government has nothing to do officially. But in such cases it generally happens that the witness can turn down or seal up all parts of the books that do not contain entries pertinent to the particular transactions. Under this statute the party is to produce such books and papers as relate to particular business transactions which would serve to throw light upon the investigation lawfully undertaken by this officer, and it would be going very far to say that the officer must get the information before he summons the party. He must be able to describe the particular document or entry so that the witness may know what the papers are that have been called for, and learn whether he has them in his possession. But to say in advance that he shall decline to produce any book, paper or document which contains entries pertaining to the particular matter under investigation, because the particular paper or book is not so described as to enable an indifferent party to put his finger on it at once, would be to exact really more than the statute and rules of law require. In other words, taking the subpoena as it is before the court, with its averments in regard to the matter of these papers, books, etc., and the entries connected with this particular business between the witness or his firm and the Bingham Brothers, it is sufficiently definite to comply with the terms of the statute.

General Noble: Suppose the attachment issues: then, as I understand it, there is an inquiry made into the case, and if I am correct, the court said it would inquire into the whole matter pertaining to the investigation.

THE COURT: Not at all. I would inquire into the matter far enough to know whether it is a case in which punishment ought to follow.

General Noble: As far as Mr. Becker is concerned, I would like to have the order made that he will appear to-morrow and proceed with this matter before the supervisor, as far as he is able.

The U. S. Attorney: There is nothing to do in the matter but to obey the order of

the court. When he shall appear is a matter for the supervisor, over which I have no control.

THE COURT: I consider that a party who raises a proposition of law, in good faith, is entitled to consideration. The question should be raised before the attachment issues—and not afterwards.

THE COURT, therefore, makes an order for an attachment, such attachment to be issued as the court shall hereafter direct. In the meantime the witness may appear before the supervisor; and if he does so, and obeys the supervisor's process as it is now held he is bound to do, the order for attachment will be discharged. Should he not so appear, the attachment will issue.